[Civ. No. 23736.   First Dist., Div. Three.   June 7, 1967.]

JONES LUMBER COMPANY, Plaintiff and Respondent, v. DEL NORTE COUNTY, Defendant and Appellant.

William W. Speer, County Counsel, and Francis H. O'Neill for Defendant and Appellant.

Cake, Jaureguy, Hardy, Buttler & McEwen, Robert L. Weiss, Hill, Dalton & Neville and Robert W. Hill for Plaintiff and Respondent.

DRAPER, P. J.—In this action for refund of 1963-64 taxes upon land and timber paid under protest, plaintiff taxpayer had judgment for $14,407.45. Defendant county appeals.

The county assessor determined that as of March 1963 the market value of all old growth timber in the county was $21 per thousand board feet, and that the value of timberland was $20 per acre. He also determined that assessment for ad valorem tax purposes should be at the rate of 25 percent of this market value. To this basic figure of $5.25 per thousand board feet and $5 per acre, however, he applied a sliding scale of discounts, based solely on the number of board feet owned by a single taxpayer, without regard to whether the total holdings were in a single parcel or in separate noncontiguous parcels. Under this scale, a taxpayer owning 20 million board feet or less in the county was assessed at $5.25 per thousand board feet and $5 per acre. Each timber owner whose holdings totalled more than 20 million board feet was assessed at a lesser percentage of these figures, according to a curve plotted upon a graph prepared by the assessor.

Plaintiff owned 4,375 acres of timberland containing some 97 million board feet. Its holdings were assessed at 91 percent of base, or $4.77 per thousand board feet and $4.55 per acre. Simpson Timber Company and Simpson Redwood Company are related corporations, but were treated for assessment purposes as a single owner. Together, they own more than one and one-half billion board feet of standing timber in the county. Their holdings were assessed at 48 percent of base, or $2.52 per thousand board feet and $2.40 per acre. The holdings of Simpson were adjacent to and interspersed among the lands of plaintiff, and one parcel is bordered on its four sides by plaintiff's timberlands.

Plaintiff applied for reduction of its assessment. The county supervisors, sitting as a board of equalization, reduced the assessment to 82½ percent of base, i.e., to $4.33 per thousand feet and $4.13 per acre. In December, plaintiff paid under protest the $34,463.40 due as taxes on this reduced assessment, and brought this action for refund. The trial court determined that the assessment should be at the 48 percent rate granted Simpson and entered judgment for plaintiff for

$14,407.45, the amount of taxes attributable to the excess assessment it found. Defendant county appeals.

■ All property in this state is to be taxed in proportion to its value (Cal. Const., art. XIII, § 1), and shall be assessed at its cash value (Rev. & Tax. Code, § 401), which is the amount at which it "would be taken in payment of a just debt from a solvent debtor" (Rev. & Tax. Code, § 110). The requirement, in other words, is for assessment at the price that property would bring if offered for sale in an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other (*De Luz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546, 562 [290 P.2d 544]). It is basic that "All laws of a general nature shall have a uniform operation" (Cal. Const., art. I, § 11).

■ The taxpayer is entitled to have his property assessed at the same rate and on the same basis of valuation as is applied to other property of like character and similarly situated. "Inequality of taxation is produced as surely by inequality of valuation as by inequality of the rate of tax." (*Birch* v. *County of Orange,* 186 Cal. 736, 741 [200 P. 647]; *McClelland* v. *Board of Supervisors,* 30 Cal.2d 124, 129 [180 P.2d 676].) "[I]ntentional systematic undervaluation . . . of other . . . property in the same class contravenes the constitutional right of one taxed upon the full value of his property." (*Sunday Lake Iron Co.* v. *Wakefield,* 247 U.S. 350, 352-353 [62 L.Ed. 1154, 1156, 38 S.Ct. 495]; *Southern Pac. Land Co.* v. *San Diego,* 183 Cal. 543, 546 [191 P. 931]; *Cumberland Coal Co.* v. *Board of Revision,* 284 U.S. 23, 28 [76 L.Ed. 146, 149, 52 S.Ct. 48].)

■ The discount formula necessarily discloses a discriminatory method of assessment. On its face it is applied to that timber and land whose market value has been fixed by the assessor at $21 per thousand feet and $20 per acre, and the proper assessed value of which he has fixed at $5.25 and $5. It is only after this full comparability has been fixed by him that he applies his scale of discounts. There is no conceivable basis upon which this discount scheme can be held to be other than discriminatory.

■ Nor does the action of the board of equalization, with all the presumptions of validity and fairness it carries (*Universal Consol. Oil Co.* v. *Byram,* 25 Cal.2d 353, 356-357 [153 P.2d 746]), immunize the results of that discount system from attack. The board did not discard the discount system and reassess the property. It merely ordered that the assessed value of

plaintiff's property "be reduced from 91% of market value to 82½% of market value." Thus, it expressly accepted the assessor's appraisal of market value. Instead of disregarding the discount system, it exaggerated its discriminatory effects as to all taxpayers smaller than plaintiff by giving plaintiff a still greater volume discount that it was entitled to upon the assessor's scale. No fraud by either board or assessor is shown or suggested. But their adjudication may be avoided if the board has proceeded arbitrarily and in wilful disregard of the limitations imposed by law (*Universal Consol. Oil Co.* v. *Byram, supra*; *Flying Tiger Line, Inc.* v. *County of Los Angeles,* 51 Cal.2d 314, 320-321 [333 P.2d 323]). "[O]n the very basis used by the assessor the excessive and unreasonable disparity between . . . assessments . . . is so obvious and inconsistent with any theory of fair dealing that it cannot be reconciled on the mere presumption that the assessor and board . . . did their duty as they saw it." (*Birch* v. *County of Orange, supra,* 186 Cal. 736, 740-741.)

█ We recognize that the elements of accessibility, terrain, species, quality, logging conditions and distance from the market are factors to be considered in appraisal and assessment of timber and timberlands. In the case of a large block of contiguous land held in single ownership, some of these factors are entitled to greater weight, at least as to portions of the land and timber. But the system of discounts adopted by assessor and board is based solely on total ownership. It is not limited to contiguous lands. Obviously, there is no reason to assume that a large owner must and will, in every case, sell all and not a part of his holdings, however separated. As pointed out by the trial court, the disparities imposed by this system are based on ownership, rather than property. If an individual owner of many parcels dies, leaving several heirs, the same land will be assessed at a much higher rate to his heirs than it was to him.

We hold that the discount system necessarily works discrimination in assessment and taxation, and must be stricken down.

█ The remedy chosen by the trial court was to reduce plaintiff to Simpson's 48 percent assessment. This but exacerbates the discrimination. It increases the invalid discount already given to plaintiff, one of the large timber owners of the county. Even if the assessments of all county owners of timberlands were reduced to 48 percent of true value, the burden of the owners of other property—homes, shops and personal

property—would be saddled with a disproportionate share of the county budget.

An alternative remedy, consistent with our determination that the discount system is invalid, might be to set aside the entire assessment roll. This drastic remedy is not within the prayer of the complaint. Moreover, the board of equalization is without power now to raise or lower the entire assessment roll (*Rittersbacher* v. *Board of Supervisors*, 220 Cal. 535, 541 [32 P.2d 135]). The parties agree that time bars collection or refund of 1963-1964 taxes resulting from any reassessment save that here in issue. We find no contrary authority. Thus no purpose would be served by vacation of the tax roll for that year.

We cannot, however, affirm the judgment which but accentuates the improper existing discrimination. Plaintiff's assessment, which already has been invalidly reduced below true value, should not be still further reduced. Plaintiff has not shown an over-assessment of its property. Rather, it has shown that it was assessed at too little, although still at a higher rate than that of Simpson. Our determination herein doubtless will assure against future use of the discount scale, and lead to proper assessment practices henceforth. No greater benefit to the payers of 1963-1964 taxes is within our power.

The judgment, insofar as it directs payment of a tax refund to plaintiff, is reversed. Costs are awarded to respondent.

Salsman, J., and Brown (H. C.), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 28, 1967.