## In Re: Tax Appeal of State College Children's House, Inc.

*Robert C. Raymon*, for appellant.
*Robert K. Kistler*, for appellee.

### FACTUAL BACKGROUND

BROWN, JR., *P.J.*, May 16, 1984—This matter comes before the court upon State College Children's House, Inc.'s (hereinafter SCCH) Petition on Appeal from Assessment. On September 28, 1983, the Centre County Board of Assessment (hereinafter the board) denied SCCH's request for exemption from real estate taxes. SCCH filed an appeal with this court on November 18, 1983, and presented evidence in a hearing conducted on February 28, 1984.

SCCH presented to this court the following evidence: SCCH is a Montessorian school. The school

curriculum is based upon the philosophy of Dr. Maria Montessori that young children have an innate desire to learn. Teacher's guidance rather than strict control is used as the foundation of a child's education. Eugenia Mahoney is president, director and founder of SCCH. She founded the school in September, 1970, operating out of rented space in churches until 1980. In July, 1980, SCCH purchased a building in State College in which to operate the school.

Presently, SCCH staffs four full-time teachers who earn between $6,000 and $9,000 per year, and two part-time teachers who are paid at a rate of $5 per hour. The corporation offers its employees no fringe benefits such as medical or life insurance. Ms. Mahoney's salary is currently $9,000 per year. SCCH is organized on a non-stock/membership basis. There have been, and are, five corporate officers (chosen by Ms. Mahoney) who constitute the Board of Directors. The members of the Board of Directors are not compensated. The Board meets once a year, sometimes with the aid of telephone conferences. The Articles of Incorporation do not provide for continuation of the school upon Ms. Mahoney's death. Ms. Mahoney testified she hoped the school would continue in the event she would be unable to continue in her present capacity.

SCCH requires a yearly tuition of $1,800 for a full-time student, and $800 for a half-time student. The number of enrolled students fluctuates from year to year. The goal is to have approximately 50 students. In the 1983-'84 school year, 64 students are enrolled. In the 1982-'83 school year, 54 students enrolled and attended. In the 1981-'82 school year, 45 students enrolled and attended.

SCCH is licensed by the Commonwealth to teach preschool through sixth grades. In the presently en-

rolled group of 64 students, there is one second grader, two first graders, 19 kindergarten students and 42 preschool students. The other two Montessori schools in Centre County are licensed only for preschool children. (Those schools do not own real estate.)

The goal of SCCH is to provide Montessorian education for those who desire it. If a family is unable to afford the costs of tuition, SCCH may offer the family a full or partial scholarship. The school has no formal scholarship criteria or guidelines, nor does it advertise the existence of financial aid. Therefore, it is available only to those families who actively seek aid and who express their sincere desire to obtain a Montessorian education for their children.

Over the past three years, scholarships have been awarded as follows:

| Year | Total No. of Students | No. of Students on Scholarships | Total Amount of Tuition Received | Value of Scholarships Given |
|------|------|------|------|------|
| 1981-82 | 45 | 1 | $61,885.00 | $1,500.00 |
| 1982-83 | 52 | 7 | $68,226.00 | $5,850.00 |
| 1983-84 | 64 | 9 | $72,000.00 Approx.* | $9,600.00 |

*This figure is based upon Ms. Mahoney's personal testimony.

In 1981-'82, approximately two percent of the students received scholarships, constituting in value approximately two and one-half percent of the total tuition received. In 1982-'83 12 and one-half percent of the students received scholarships, constituting in value eight and one-half percent of the total tuition received. In 1983-'84, 14 percent of the students received scholarships, constituting in value approximately 12 and one-half percent to 13 and one-half percent of the total tuition received.

Parents of children who attend SCCH routinely volunteer their time to repair, maintain and clean

the premises. Ms. Mahoney testified that the approximate value of these "donated" services would be $800 per month. No board member or teacher receives any compensation apart from fixed salaries. All "profit" is channeled back into the school to improve facilities and decrease debt.

In May of 1983, the United States Internal Revenue Service granted SCCH an exemption from federal income tax under Section 501(c)(3) of the I.R. Code, effective retroactively to July of 1975.

SCCH has realized the following operating profits and losses:

> 1980: Loss of $6,172.00
> 1981: Loss of $3,857.00
> 1982: Profit of $7,758.00

These figures are based upon standard accounting practices. The school receives yearly donations ranging for $250 to $750.

Ms. Mahoney testified that if the SCCH corporation were to dissolve, the assets would be "invested" in another Montessorian school.

## DISCUSSION

SCCH bears the burden of bringing itself within the ambit of 72 P.S. §5453.202, whch reads as follows:

*(a) The following property shall be exempt from all county, borough, town, township, road, poor, county institution district and school (except in cities) tax, to wit:

(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and main-

tained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose: Provided further, That the property of associations and institutions of benevolence or charity be necessary to and actually used for the principal purposes of the institution and shall not be used in such a manner as to compete with commercial enterprises."

Section 5453.202(3) is based upon constitutionally granted legislative power to exempt charities from taxation. Article VIII, Section 2, of the Constitution of the Commonwealth of Pennsylvania reads as follows:

"The General Assembly may by law exempt from taxation: . . . (v) Institutions of purely public charity."

Because taxation of real estate is the rule and exemption is the exception, Section 5453.202 must be strictly construed against a taxpayer—here SCCH. Appeal of Doctor's Hospital, 51 Pa. Commw. 31, 414 A.2d 134 (1980).

Whether an institution such as SCCH constitutes a "purely public charity" is a mixed question of law and fact and each case be decided on its unique factual composition. Id. at 34-35, 414 A.2d at 136.

Clearly, SCCH and other institutions of learning may charge its students tuition or partial tuition and still constitute a charity. In re: Hill School, 370 Pa. 21, 87 A.2d 259 (1952). However, to qualify as a purely public charity, the institution must donate or render gratuitously a substantial portion of its services. Robert Morris College v. Board of Property Assessment, 5 Pa. Commw. 648, 291 A.2d 567 (1972).

SCCH cites Appeal of Woods Schools, 195 Pa.Super. 531, 171 A.2d 897 (1961), for the proposition that if scholarships offered exceed ten percent of the total tuition, then exemption from taxation is proper. The percentage of students on full or partial scholarships is by itself largely irrelevant. Only in the 1983-'84 school year did the dollar amount of scholarships exceed ten percent of the gross tuition charged, and these figures are not entirely accurate, because the "total amount of tuition received" in 1983-'84 has yet to be exactly determined. Therefore, even accepting appellant's interpretation of the Woods School case, SCCH has failed to consistently meet that ten percent standard. In any case, this court holds that SCCH does not donate or render gratuitously a substantial portion of its service.

SCCH also fails to meet other criteria necessary to qualify for a real estate tax exemption.

An institution claiming to be charitable and seeking exemption must possess an eleemosynary characteristic not possessed by institutions devoted to private gain or profit. Robert Morris College v. Board of Property Assessment, 5 Pa. Commw. 648, 291 A.2d 567 (1972). SCCH is not a school for poor or underprivileged students, like many of the schools and institutions in the cases cited by both appellant and appellee. More importantly, less than one-third of SCCH's students would normally attend public schools, and only 5 percent would attend grade levels above kindergarten. The attendance of the other two-thirds of SCCH's students does not relieve the Commonwealth of any financial burden, but merely decreases the potential pool of applicants for private day care centers and nursery schools. See Homewood-Brushton Citizens Renewal Council v. Department of City Treasurer, 27 Pa. Commw. 630, 634, 367 A.2d 405, 407-08 (1976). Therefore, we

find that, to a large extent, SCCH competes with commercial enterprises. The fact that a Montessori school may offer a child a different method of education only enhances its competitive position in the day care/nursery school market, rather than removing it from the ambit of Section 5453.202.

Additionally, SCCH was not founded by, nor is it substantially maintained by, public charity. Most, if not all charitable contributions received by SCCH are made by the families or relatives of students and constitute only a small fraction of the school's income.

Therefore, this court concludes that SCCH is neither a "purely public charity" under Article VIII, Section 2, of the Pennsylvania Constitution, nor is it qualified for an exemption under 72 P.S. §3453.202(3).

The court notes that the persons involved in the State College Children's House are well intentioned and deserve credit for the success of the venture. No doubt, it serves a good purpose and renders a worthwhile educational alternative. However, this, in and of itself, cannot qualify SCCH for tax exempt status. See Tax Appeal of The Music Academy, 9 Centre Co. L.J. 697 (1976).

## ORDER

And now, this May 16, 1984, State College Children's House's appeal from Centre County Board of Assessment's denial of tax exempt status dated September 28, 1983, is hereby denied.